190 So.2d 686

**Dollie MILES et al.**

**v.**

**Doris GAY.**

**7 Div. 667.**

Supreme Court of Alabama.

Nov. 4, 1965.

On Rehearing Oct. 6, 1966.

Inzer, Martin, Suttle & Inzer, Gadsden, for appellants.

Copeland & Copeland, Gadsden, for appellee.

ON REHEARING

COLEMAN, Justice.

The original opinion is withdrawn and the following is substituted as the opinion of the court.

The wife obtained a divorce from the bonds of matrimony and an award of $10.00 per week, payable by the husband beginning September 29, 1945. The decree granting divorce and awarding the payments to the wife was rendered October 16, 1945. The decree did not undertake to impose any lien on the property of the husband.

The husband made some payments to the wife, but he never fully complied with the decree.

In 1949, the husband's father died and the husband inherited from the father a certain undivided interest in land.

On April 20, 1953, the wife recorded in the office of the Judge of Probate a certificate of the register, which, when an error is corrected, recites that on October 16, 1945, the wife recovered from the husband a "Judgment for the sum of Ten & no/100 ($10.00) [Dollars] per week, beginning on the 29th day of September 1945," and names the wife's attorney of record.

On December 21, 1954, the husband executed a mortgage on his interest in the land he had inherited. The mortgage was filed for record January 25, 1955, all sub-

sequent to the date on which the wife recorded the first certificate in 1953.

On October 14, 1955, the wife recorded a second certificate of the register which corrects the judgment date, names a different person as the wife's attorney, and is otherwise the same as the first certificate.

The wife caused execution, based on the decree of divorce, to issue against the husband. The execution was levied on the land inherited by the husband and it was sold to the wife at execution sale on May 5, 1956.

The wife then filed a bill to sell the land for division. The holders of the mortgage executed by the husband claim that the mortgage lien is superior to the title of the wife which she acquired by purchase at the execution sale.

The trial court decreed that the wife's title is superior to the lien of the mortgage and the holders of the mortgage appeal.

The only theory on which it can be contended that the wife acquired a title, superior to the mortgage, is to say that by recording the first certificate in the office of the Judge of Probate on April 20, 1953, the wife acquired a lien on all property of the husband by virtue of §§ 584 and 585 of Title 7, Code 1940, which recite as follows:

"§ 584. The owner of any judgment or decree rendered in any court of record of this state, or of the United States, held in this state, may file in the office of the judge of probate of any county of this state, a certificate of the clerk or register of the court by which the judgment or decree was rendered which certificate shall show the style of the court which rendered the decree or judgment, the amount and date thereof, the amount of costs, the names of all parties thereto, and the name of the plaintiff's or complainant's attorney, and shall be registered by the judge of probate in a book to be kept by him for that purpose, which said register shall also show the date of the filing of the judgment or decree, and said judge shall make a proper index to said book, which shall also show under the proper letter or letters of the alphabet the names of each and every defendant to said judgment or decree, and such judgments or decrees shall be recorded in chronological order of the filing of such judgments or decrees."

"§ 585. Every judgment or decree, a certificate of which has been filed as provided in the preceding section, shall be a lien in the county where filed, on all property of the defendant, which is subject to levy and sale under execution, and such lien shall continue for ten years after the date of such judgment, provided, however, that when suit or other proceedings to enforce or foreclose said lien is instituted or begun within said ten years, but has not been completed, decided or determined within said ten year period, and, at the time said suit or proceeding is instituted or begun, or lien claimed therein a lis pendens notice thereof is filed in the office of the judge of probate of the county in which said property is situated, the lien herein provided for shall continue, as to the property upon which said lien is claimed in said suit or proceeding, and may be enforced or foreclosed in that suit as if said ten year period had not elapsed. No insolvency proceedings or declaration of insolvency shall affect or impair such lien, except bankruptcy proceedings instituted within four months after the filing of the certificate of judgment or decree for record as provided by law. The filing of said certificate of judgment or decree, as provided in the preceding section, shall be notice to all persons of the existence of the lien thereby created."

The question for decision is whether the recording of a certificate, which recites that the wife has recovered a judgment against the husband for $10.00 per week, beginning seventeen days before the date of

the judgment, was sufficient to fasten a lien on all the property of the husband.

Other courts have dealt with the question.

In McClanahan v. Hawkins, 90 Ariz. 139, 367 P.2d 196, the court was called to decide whether the grantees of a divorced husband were the rightful owners of real property which the husband had conveyed subsequent to a divorce decree. The facts were that on March 16, 1956, the divorce court entered a decree granting divorce and awarding the real property to the husband as his sole and separate estate. The decree provided that he should make periodic payments for support of wife and two children and should pay $250.00 for attorney's fees. On July 31, 1957, the decree was duly recorded. On October 8, 1957, the husband conveyed the real property to the grantees. Three days later, October 11, 1957, the husband appeared in the divorce court in response to an order to show cause and was adjudged to be in arrears (1) in payment of the attorney's fees and (2) for $1,157.00 in support payments. On October 14, 1957, execution was issued from the divorce court and levied on the property. The grantees instituted an action for a judgment declaring that the decree of divorce was not a lien on the property. The wife contended that a judgment lien on the land existed by reason of statutes which recited as follows:

" '§ 33–961 . . .

" 'B. An abstract of the judgment of a court, certified by the clerk, shall be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien upon the real property of the judgment debtor before the judgment shall become a lien upon or in any manner affect or encumber the real property of the judgment debtor, or any part thereof. . . . '

" '§ 33–964 . . .

" 'A. From and after the time of recording as provided in § 33–961, a judgment shall become a lien for a period of five years * * *.' " (90 Ariz. at page 141, 367 P.2d at page 197)

The trial court held that the wife did not have a lien on the property and the Supreme Court of Arizona affirmed. The court observed:

" . . . In order that a judgment operate as a lien under a general judgment lien statute, it must be final and conclusive, and the amount due must be definite and certain. . . . " (90 Ariz. at page 141, 367 P.2d at page 197)

The court noted that the legislature had given the court continuing jurisdiction to modify a divorce decree as to payment of money for alimony or support or expenses of the proceedings, and, therefore, that a divorce decree is not final and conclusive as to some of its terms. The court said, however, that it followed the rule that installments become vested when due and the court had no power to modify as to past-due installments. The court said also:

"This immunity of accrued installments does not however, change the inherent nature of the divorce decree, i. e., that the amount which ultimately may become due is uncertain, subject to the continuing court authority to augment or decrease the payments as changing conditions and needs of parties dictate. Without delving into the multifarious contingencies affecting amounts payable under divorce decrees we need merely mention a few events which ordinarily change or vacate orders for periodical payments and point up their inconclusive nature.

"In the instant case when the appellant recorded the divorce decree in an attempt to place a lien upon her divorced husband's real property, the decree was not final in the sense that the alimony and support payments could still be mod-

ified or terminated. In this respect it was not within the contemplation of the general judgment lien statute.

" . . .

"The Arizona legislature has recognized the distinction between obligations and duties imposed by and under a decree of divorce and those imposed by an ordinary money judgment. Hence our statutes relating to the dissolution of marriage contain certain provisions stating the extent of the court's authority and discretion in entering a judgment for divorce, e. g., A.R.S. § 25–319 describes authority to make an allowance for alimony, support, and for costs of the proceedings, and A.R.S. § 25–318 dealing with divorce judgments provides for the settlement of all of the property rights of the parties to the actions. Section 25–318 reads in part as follows:

" ' . . . The court may impress a lien upon the separate property of either party to secure the payment of any interest or equity the other party has in or to such separate property, or any equity which arose in favor of either party out of their property during existence of the marriage relation, or to secure the payment of an allowance for support and maintenance of the wife or the minor children of the parties. The judgment shall specifically describe the real property affected which is located in this state.

" 'C. Any separate property of either party of which no disposition is made in the judgment shall remain the separate property of the party free of all claims of the other party.'

"This 'divorce lien statute' gives the court power to make a divorce decree for alimony or support a lien on the separate property of the person ordered to pay. More recent in expression of legislative intent than the general judgment lien statute, this statute augments the general lien statute. However, under this statute the judgment must specifically describe the real property affected. If it does not, the separate property of either party remains free of all claims of the other party. This does not mean that in a divorce action the general judgment lien statute is superceded by the 'divorce lien statute'. Nor does a trial judge's discretionary refusal to apply the 'divorce lien statute' forever foreclose the application of the general lien statute as a means to obtain past-due payments. On the contrary, if the trial judge in his discretion does not apply the 'divorce lien statute' at the time of the divorce, subsequently as support and other payments accrue incident to the divorce proceedings, judgment may be had against the delinquent party and such recorded judgment then becomes a general lien on the real property of the judgment debtor.

"Where no prior lien exists in the divorce decree none is created until the judgment for the accrued amounts is recorded, even though the court attempts to encumber the judgment debtor's property by a declaration contained in the judgment. With respect to jurisdictions which have held that a judgment lien exists to secure payment of accrued and past-due alimony or support allotments, the general view is that the lien does not arise automatically as to each installment as it becomes due, but arises only when the court has formally determined the total amount due and has reduced the delinquent payments to judgment. (Citations Omitted.)" (90 Ariz. at pages 142, 143 and 144, 367 P.2d at pages 197, 198, and 199.)

In Harris v. Worsham, 164 Miss. 74, 143 So. 851, the court considered a wife's claim that she was entitled to a lien on the husband's property to secure periodic support payments awarded in a divorce decree. Subsequent to the divorce decree and after the decree had been enrolled in the office of the circuit clerk, the husband

executed a deed of trust to secure a debt. The wife contended that she had a lien under the divorce decree superior to the deed of trust. In deciding that the wife had no lien, the court said:

"The appellant's contentions are that, although the decree in the divorce proceeding does not award her any lien on property owned by her former husband, C. H. Harris, nevertheless the decree, when enrolled on the judgment roll in the office of the clerk of the circuit court in accordance with the provisions of sections 453 and 611, Code of 1930, became a general lien on all of the property owned by C. H. Harris.

"We will assume, but merely for the purpose of the argument, it not being herein necessary for us to decide the question, that a decree of a chancery court when enrolled in accordance with the provisions of section 611, Code of 1930, becomes a general lien on the property of the person against whom it was rendered.

"  .   .   .

"That portion of the decree providing for the future maintenance of the appellant by her former husband by directing him to pay her a stipulated amount thereafter in monthly installments creates not a present debt due her by her husband, and each installment of the alimony comes within that category when, but not until, default is made in the payment thereof. Therefore, in the very nature of things, a lien therefor cannot arise, under the statute, if at all, as to which we express no opinion until that fact comes into existence.

"It is clear from the allegations of the bill that Harris' default in the payment of these installments of alimony arose after the execution of the appellee's deed of trust." (143 So. at pages 851 and 852)

The Supreme Court of Florida has said:

"Allotments for permanent alimony do not become liens when made because from their very nature they are indeterminate and inconclusive. Dickenson v. Sharpe, 94 Fla. 25, 113 So. 638. . . ." Robinson v. Robinson, 154 Fla. 464, 18 So.2d 29, 30.

In Dickenson v. Sharpe, supra, the court held that the general judgment lien statute, Section 2802, Rev.Gen.St.Fla., did not apply to divorce decrees for alimony which should be governed by a separate statute, to wit, Section 3198, Rev.Gen.St.Fla. Referring first to Section 3198, the court said:

"This section of the statutes appears to be a legislative construction to the effect that decrees for permanent alimony do not constitute a lien upon the property of the husband against whom such decree is rendered and to provide a specific method for reaching the property of the husband in cases where it is necessary to resort to a subjection of the property to enforce the compliance with the terms of the decree. We hold that section 2802, Rev. Gen.St.Fla., applies to judgments and decrees in which the total indebtedness adjudged or decreed is fixed in such judgment or decree, and that it should not be construed to apply to decrees for permanent alimony, the amount necessary to fully satisfy and discharge which can never be ascertained nor fixed by the court or the parties and which does not require the payment of the amount named in the decree except upon the condition that both parties be living on stated future dates. . . ." (113 So. at page 639)

In a proceeding by a divorced wife to collect past due monthly alimony payments, the Supreme Court of Arkansas said:

"  .   .   . So far as the alimony was concerned, the decree for same was not a final determination of the rights of the parties and has always been open to review should there be a change in the circumstances of the parties under the rule

in the case of Holmes v. Holmes, 186 Ark. 251, 53 S.W.2d 226, nor is a decree for future payments of permanent alimony a final decree upon which an execution might be issued or which might become a lien upon real estate. . . ." Jones v. Jones, 204 Ark. 654, 656, 163 S.W.2d 528, 529.

In a proceeding to collect monthly payments allowed to a divorced wife, the Court of Appeals of Maryland said:

". . . Preliminary to an execution on a decree like the one now under consideration, a proceeding to ascertain the amount of the unpaid installments, and the existence of the conditions upon which its enforcement is dependent, would be essential. . . . Until the passage of an order determining the amount due and authorizing execution, the decree would not become a lien on the defendant's property, but would only have the effect of an adjudication of liabilities thereafter maturing at stated periods. . . ." Marshall v. Marshall, 164 Md. 107, 116, 163 A. 874, 877.

In Slack v. Mullenix, 245 Iowa 1180, 1185, 66 N.W.2d 99, 101, the court said:

". . . We hold an installment alimony or support money judgment does not constitute an automatic lien upon real estate for future unpaid installments and affirm the trial court's quieting title decree."

See Beesley v. Badger, 66 Utah 194, 240 P. 458; Chero-Cola Co. v. May, 169 Ga. 273, 149 S.E. 895, 66 A.L.R. 1469.

■ That the certificate filed by the wife in the instant case did not fasten a lien on the husband's land seems to be the better rule. A consideration of our own cases and §§ 584 and 585 seems to require that we follow the rule that no lien attached to the husband's land in the instant case.

In Morris v. Waldrop, 213 Ala. 435, 105 So. 172, this court considered the sufficiency of a certificate recorded in the office of the judge of probate to fasten a judgment lien on real estate of the defendant. This court decided that the certificate was insufficient to establish a lien, saying, with respect to the judgment creditors:

". . . They were at such time without the lien of an execution or that of a duly registered judgment. . . ." (213 Ala. at page 439, 105 So. at page 177)

The judgment creditors were J. B. Gorman and Mary J. Gorman. In deciding that their judgment certificate was insufficient to establish a lien, this court said:

"The certificate of judgment of the Gormans is challenged as insufficient to give the statutory lien, in its failure to give the amount of the costs. The certificate bears its own infirmity, stating that the 'costs of said suit cannot be ascertained at this time.' The statute (section 4156 of the Code of 1907) required the certificate to show: (1) The style of the court rendering the same; (2) the amount and date thereof; (3) the amount of costs; (4) the names of all parties thereto; and (5) the names of plaintiff's or complainant's attorneys. This was required as a condition precedent to the lien provided for in section 4157 of the Code of 1907. No execution had issued on the judgment as such until more than a year had expired from the date of its rendition. There was then no execution lien. The lien of a recorded judgment is distinct from that resulting from execution. Johnston v. Bates, 209 Ala. 16, 95 So. 375. The statute, being in derogation of the common law, must be strictly pursued by him who desires its protection.

"The strict construction given said statute is illustrated in Ladd v. Smith, 209 Ala. 114, 95 So. 280, where the certificate described the plaintiffs as 'Frank M.

'Ladd et al.,' and was held insufficient to create the lien; and, on authority of Duncan v. Ashcraft, 121 Ala. 552, 25 So. 735 (failing to show the name of the owner), declaring for strict construction, it was held in Conn v. Sellers, 198 Ala. 606, 73 So. 961, that the description in judgment of plaintiff as 'J. Pollock & Co.' was insufficient. In the instant certificate, as in the foregoing cases, the certificate of judgment showed material defect, lack of compliance with the statute. It was an unwarranted deletion of the statute which prevented the lien attaching. The Legislature declared the required material facts to be carried into the certificate and to be shown by it on file or of record in the probate court, necessary to the creation of such lien on property of defendants in judgment. This is required by the plain letter of the law. When there is strict adherence to, and due compliance with, the statute, it becomes an instrumentality creating and preserving a lien on all the property of the defendant in the county where filed, provided said property be subject to levy and sale under execution, and not otherwise. Manchuria Steamship Co. v. Harry G. G. Donald & Co., 200 Ala. 638, 77 So. 12." (213 Ala. at pages 438 and 439, 105 So. at page 176)

In an earlier case, this court held the certificate insufficient because the name of the owner of the judgment was not stated in the certificate, as was required by the original act which has since been amended as to this requirement. This court said:

"The following general propositions, and which are well-settled rules of construction, we take as our guide in dealing with the question before us: Those statutes which are in derogation of the common law, and such as create rights in their nature extraordinary, are to be strictly construed. A substantial compliance in every essential particular is required, before the benefits conferred by such statutes can be obtained or enjoyed.

An omission of any material or particular requirement contained in the provisions of the statute, in an attempt to secure the benefit or right conferred by the statute, cannot be deemed a substantial compliance.

"That said act creates an extraordinary right, it seems to us, cannot be doubted. Without the consent of the judgment debtor, a lien is created upon all his property subject to levy and sale under execution within the county in which the judgment is filed and registered; an encumbrance not only upon such property as the judgment debtor may then own and possess, subject to levy and sale, but also of all property subject to levy and sale which may come into his ownership and possession at any time within a period of 10 years within the county of the registry of such judgment; a lien, a right, not created by the contract of the parties, nor by operation of the common law, but purely and simply by statutory enactment, giving to the owner of such judgment a security for the payment of the judgment debt tantamount to a mortgage upon all of the property of the judgment debtor within the county of the registry subject to levy and sale, and leaving it entirely to the pleasure and option of the judgment creditor, or owner of the judgment, to foreclose the same, by the issuance of an execution or by a bill in equity, at any time within a period of 10 years." Duncan v. Ashcraft, 121 Ala. 552, 554, 555, 25 So. 735, 737.

It has not been shown that this court has heretofore repudiated its holding that §§ 584 and 585 are in derogation of the common law and are to be strictly construed.

In Booth v. Bates, 215 Ala. 632, 634, 112 So. 209, 210, this court said:

"The registration of the judgment under Code, § 7874, was insufficient to create a judgment lien for failure to show the names of all the parties to the judgment. Ladd v. Smith, 209 Ala. 114, 95 So. 280."

In Duncan v. Autauga Banking & Trust Company, 223 Ala. 434, 435, 136 So. 733, this court said:

"Whatever may be the rule elsewhere, it is the settled law of this state that, to create a lien by filing for registration a certificate of judgment under the provisions of sections 7874 and 7875, Code of 1923, there must be strict observance of the requirements of the statute as to the contents of such certificate. Duncan v. Ashcraft, Admr., etc., 121 Ala. 552, 25 So. 735; Roney v. Dothan Produce Co., 217 Ala. 475, 117 So. 36; Conn v. Sellers, 198 Ala. 606, 73 So. 961; Ladd v. Smith, 209 Ala. 114, 95 So. 280; Morris v. Waldrop, 213 Ala. 435, 105 So. 172; Reuf et al. v. Fulks et al., 219 Ala. 252, 122 So. 14.

" . . .

"In the instant case, the plaintiffs in the suit in which the judgments were rendered, as the averments of the bill show, were 'J. G. Duncan, Sr., and J. G. Duncan, Jr.,[1] doing business as partners under the firm name of 'J. G. Duncan & Son,' and the certificates issued stated the names of plaintiffs as 'J. G. Duncan & Son.' This was not a sufficient compliance with the statute. Ladd v. Smith, supra; Conn v. Sellers, supra."

In Peterson v. Drennen Motor Car Co., 256 Ala. 99, 102, 53 So.2d 375, 378, this court said:

"Sections 584 and 585 are in derogation of the common law and are to be strictly construed. Morris v. Waldrop, 213 Ala. 435, 105 So. 172. . . ."

The certificates which the wife filed in the instant case do not mention costs at all. For failure to state the amount of costs, the certificates are insufficient to establish a lien, or else Morris v. Waldrop, supra, must be overruled.

§ 584 requires also that the certificate shall show the amount of the judgment.

The certificates filed by the wife in the instant case do not show the amount of the judgment. It is no answer to this to say that the amount is $10.00 for each week. As the court said in Harris v. Worsham, supra, "That portion of the decree providing for the future maintenance of the appellant [wife] by her former husband by directing him to pay her a stipulated amount thereafter in monthly installments creates not a present debt due her by her husband. . . ." By the very nature of the case, the amount the husband may become obligated to pay cannot be ascertained. Whether the husband will live one week or a hundred weeks cannot be known. How many weeks the wife may live or remain unmarried cannot be foretold. Will the amount of the judgment and lien continue to increase each week after death of husband or remarriage of the wife?

To say that the legislature intended to give a lien when the amount of the judgment is unknown is to fly in the face of the statute and the holding in Morris v. Waldrop, supra. Since that decision, § 584 of Title 7 without material change, has been carried into the Code of 1940. The statute still requires the certificate to show the amount of costs. By well understood rules of statutory construction, it must be presumed that the legislature approved the construction given to the statute in Morris v. Waldrop, supra.

Where a statute requires that the certificate show the amount of the judgment and also the amount of costs, it would be inconsistent to hold that the certificate must state the amount of the costs but need not state the amount of the judgment.

As the court said in McClanahan v. Hawkins, supra, ". . . the lien does not arise automatically as to each installment as it becomes due, but arises only when the court has formally determined the total amount due and has reduced the delinquent payments to judgment." (90 Ariz. at page 144, 367 P.2d at page 199)

**140**

In addition to the remedy for contempt, the wife, who has obtained a decree requiring the husband to make periodic payments for the wife, can protect herself under the present statute as to past-due installments by obtaining from the court an adjudication that the husband is indebted to her in the amount of the delinquent payments as determined by the court. It would seem clear that recording a proper certificate based on such a judgment for a stated amount would give the wife a lien .on the property of the husband for the amount judicially ascertained to be due.

We are of opinion that, under the present statute, §§ 584, 585, Title 7, a lien for periodic installment payments can be acquired only by a judicial ascertainment and declaration of the amount of past-due installments and filing a proper certificate showing such a judgment or decree. If the law ought to be changed to provide for a lien to secure future installments under a divorce decree, that is a matter confided by the Constitution to the legislature and not to this court.

To hold in the case at bar that the certificates filed by the wife complied with all requirements of §§ 584 and 585 would be to make sufficient now that which was held insufficient by this court forty years ago. Being of opinion that the wife acquired no lien on the husband's land, we are further of opinion that the lien of the mortgage is superior to the wife's title and that the decree appealed from is due to be reversed.

Original opinion withdrawn.

Rehearing granted.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL, and HARWOOD, JJ., concur.

LAWSON, J., concurs specially.

LAWSON, Justice (concurring specially):

LAWSON, J., concurs in the reversal because the certificate is insufficient to establish a lien in that the amount of costs is omitted from the certificate.